# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LEGACY SEPARATORS LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-2081 |
| | § | |
| HALLIBURTON ENERGY SERVICES, | § | |
| INCORPORATED, *et al*, | § | |
| | § | |
| Defendants. | § | |

## JURY VERDICT

## QUESTION NO. 1

**Instructions Concerning Question No. 1:**

Legacy contends that Halliburton directly (or literally) infringed claims 1 and 8 of the '597 Patent. Legacy must prove this contention by a preponderance of the evidence.

Claims 1 and 8 of the '597 Patent use the phrases "partially vacate" and "submersible pump." When you interpret these claims you should apply the following definitions. The phrase "partially vacate" means "a dynamic low liquid level that provides space for gas and liquid separation." The phrase "submersible pump" means "the main pump that propels production fluid to the surface."

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.

To determine literal infringement, you must compare the accused method with each patent claim Legacy asserts is being infringed, using these instructions as to the meaning of the terms the patent claims use or, if not defined, as it would be understood by one of ordinary skill in the art. In this case, Legacy contends claims 1 and 8 of the '597 Patent are infringed.

A patent claim (whether it be claim 1 or claim 8) is literally infringed only if Halliburton's use of a gas separator system includes each and every method step recited in that patent claim. If Halliburton's use of a gas separator system does not contain one or more method steps recited in a claim, it does not literally infringe that claim.

You must consider each claim 1 and 8 of the '597 Patent separately. If you find Halliburton performs each and every step of a claim, then the claim is infringed, even if the accused method may be better, more efficient, or may perform additional steps or functions not found in the claims. The determination of literal infringement depends on the presence of the claim elements in the accused method, not similarities between the accused method and the prior art.

Direct infringement occurs where all steps of a claimed method are performed by or are attributable to a single party. If Halliburton's use of gas separator systems for separation does not itself include every requirement in the patent claim, Halliburton cannot be liable for infringement. Nor can it be liable merely because other parties supplied the missing steps, unless Halliburton directed or controlled the acts by those parties. Halliburton does not direct or control someone else's action merely because Halliburton entered into a business relationship with that person. Instead, Halliburton must specifically instruct or cause that other person to perform each step in an infringing manner, so that every step is attributable to Halliburton as controlling party.

Both of the asserted claims (1 and 8) of the '597 Patent use the word "comprising." "Comprising" means "including the following but not excluding others." Thus, if you decide Halliburton's accused use of gas separator systems includes all the requirements in that claim, even if Halliburton's use of gas separator systems includes additional method steps, you must find that Halliburton's method literally infringes the claim.

Unless prohibited by contract, the purchaser of a device which includes a number of components has a right to repair the device. The MSA does not prohibit such repairs. A purchaser does not have the right to reconstruct the entire system. Replacement of a worn out component is permitted and does not constitute infringement of the patent on the '597 method.

Answer each subpart of Question No. 1 and consider each accused Halliburton product separately and compare each product and the evidence concerning each to only the claims 1 and 8 of the '597 Patent.

**Question 1(a):  Do you find that Halliburton directly infringes either of the following claims of the '597 Patent method by the use of its GSR products?**

Answer "Yes" or "No" as to each claim.

Claim 1 _____*NO*_____

Claim 8 _____*NO*_____

**Go to Question No. 1(b).**

**Question 1(b):  Do you find that Halliburton directly infringes either of the following claims of the '597 Patent method by the use of its GSB products?**

Answer "Yes" or "No" as to each claim.

Claim 1 _____

Claim 8 _____

**Go to Question No 1(c).**

**Question 1(c):  Do you find that Halliburton directly infringes either of the following claims of the '597 Patent method by the use of its Q-Max XT products?**

Answer "Yes" or "No" as to each claim.

Claim 1 _____

Claim 8 _____

**Go to Question No. 2.**

**QUESTION NO. 2**

**Instructions Concerning Question No. 2:**

Legacy contends that Halliburton actively induced another person to directly infringe claims 1 or 8 of Legacy's patent. To prove active inducement to infringe a patent, Legacy must establish, by a preponderance of the evidence, that:

(1)   Someone other than Halliburton directly infringed at least one patent claim;
(2)   Halliburton aided, instructed, or otherwise acted with the intent to cause another to directly infringe claims 1 or 8 of the '597 Patent;
(3)   Halliburton knew of the patent, or showed willful blindness to the existence of the patent, at that time; and
(4)   Halliburton knew, or showed willful blindness, that the actions of another would infringe at least one claim of the patent.

If you find that Halliburton was aware of the '597 Patent, but believed that the acts it encouraged did not infringe that patent, Halliburton cannot be liable for inducement. Although Halliburton has no obligation to obtain an opinion of counsel, you may consider whether Halliburton relied on a legal opinion that was well-supported and believable and that advised Halliburton that the method did not infringe Legacy's patent.

In order to establish active inducement of infringement, it is not sufficient that Halliburton's customers themselves directly infringe the claim. Nor is it sufficient that Halliburton was aware of the act(s) by its customers that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Halliburton specifically intended its customers to infringe the '597 Patent or that Halliburton believed there was a high probability that its customers would infringe the '597 Patent, but deliberately avoided learning the infringing nature of its customers' acts. The mere fact, if true, that Halliburton knew or should have known that there was a substantial risk that its customers' acts would infringe the '597 Patent would not be sufficient for active inducement of infringement.

Unless prohibited by contract, the purchaser of a device which includes a number of components has a right to repair the device. The MSA does not prohibit such repairs. A purchaser does not have the right to reconstruct the entire system. Replacement of a worn out component is permitted and does not constitute infringement of the patent on the '597 method.

As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis. Answer each subpart of Question No. 2 and consider each accused Halliburton product separately and compare each product and the evidence concerning each to only the claims 1 and 8 of '597 Patent.

**Question 2(a):  Do you find that Halliburton performed an act that induced the infringement of either of the following claims of the '597 Patent method by the use of its GSR products?**

Answer "Yes" or "No" as to each claim.

Claim 1       _____NO_____

Claim 8       _____NO_____

**Go to Question No. 2(b).**

**Question 2(b):  Do you find that Halliburton performed an act that induced the infringement of either of the following claims of the '597 Patent method by the use of its GSB products?**

Answer "Yes" or "No" as to each claim.

Claim 1       _____

Claim 8       _____

**Go to Question No. 2(c).**

**Question 2(c):  Do you find that Halliburton performed an act that induced the infringement of either of the following claims of the '597 Patent method by the use of its Q-Max XT products?**

      Answer "Yes" or "No" as to each claim.

      Claim 1             _____

      Claim 8              _____

**If you answered "Yes" to any subpart of Question Nos. 1 or 2 for the GSR product, then answer Question No. 3. Otherwise do not answer Question No. 3 and go to Question No. 4.**

**If you answered "Yes" to any subpart of Question Nos. 1 or 2 for the GSR product, then answer Question No. 3. Otherwise do not answer Question No. 3 and go to Question No. 4.**

## QUESTION NO. 3

**Instructions Concerning Question No. 3:**

If you find that Halliburton's use of GSR separator systems infringed the '597 Patent, Halliburton asserts a defense of patent exhaustion. Halliburton bears the burden of proving this defense by a preponderance of the evidence. A patent owner exhausts his or her rights in a patent through an authorized sale or license of a patented item. That means that the patent owner may not further recover royalties on the use of the item. If you find that the GSR separators that Legacy sold to Halliburton and Global embody the essential features of the '597 Patent, Legacy's rights are exhausted, and Legacy may not recover a reasonable royalty for Halliburton's use of those separators.

**Question 3:  Do you find that Legacy's sale of GSR separators to Global and Halliburton exhausted Legacy's rights in those separators?**

Answer "Yes" or "No":  _____

**If you answered "Yes" to any subpart of Question Nos. 1 or 2, then answer Question No. 4. Otherwise do not answer Question No. 4 and go to Question No. 5.**

**If you answered "Yes" to any subpart of Question Nos. 1 or 2, then answer Question No. 4. Otherwise do not answer Question No. 4 and go to Question No. 5.**

## QUESTION NO. 4

**Instructions Concerning Question No. 4:**

If you find that Halliburton directly infringed or induced infringement of claim 1 or 8 of the '597 Patent, then you must decide whether that infringement was willful. Legacy must prove this claim by a preponderance of the evidence. To show that Halliburton's infringement was willful, Legacy must prove that Halliburton knew of the '597 Patent and intentionally infringed at least one asserted claim of the Patent.

Willfulness, however, requires you to determine whether Legacy proved that it is more likely than not that the infringement by Halliburton was especially worthy of punishment. You must base your decision on Halliburton's knowledge and actions at the time of the alleged infringement. You may not determine that the infringement was willful just because Halliburton knew of the '597 Patent and infringed it. Instead, willful infringement is reserved for only the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith.

To determine whether Halliburton acted willfully, consider all facts. These may include, but are not limited, to:

(1)    Whether Halliburton acted consistently with the standards of behavior for its industry;

(2)    Whether Halliburton intentionally copied a method of Legacy that is covered by the '597 Patent;

(3)    Whether Halliburton reasonably believed it did not infringe or that the patent was invalid;

(4)    Whether Halliburton made a good-faith effort to avoid infringing the '597 Patent, for example, whether Halliburton attempted to design around the '597 Patent; and

(5)    Whether Halliburton tried to cover up its infringement.

Halliburton contends it did not infringe the '597 Patent and did not act willfully because it relied on a legal opinion that advised Halliburton that its use of separator systems did not infringe the '597 Patent method or that the '597 Patent was invalid. You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

**Question 4:  Do you find that Halliburton willfully infringed either of the following claims of the '597 Patent method through the use of any of its products?**

Answer "Yes" or "No" as to each claim.

Claim 1          _____

Claim 8          _____

**Go to Question No. 5.**

## QUESTION NO. 5

**Instructions Concerning Question No. 5:**

Halliburton contends that claims 1 and 8 of the '597 Patent are invalid. Claims of an issued patent may be found to be invalid because of, among other things, inoperability and lack of enablement. You must determine whether each claim of the '597 Patent is invalid. To prove that any claim of a patent is invalid, Halliburton must establish that fact by clear and convincing evidence.

In determining whether a claim is invalid, you must consider each of the claims separately. If you find that a claim fails to meet the essential requirements of the patent laws (as discussed more fully in the particular questions), then that claim is invalid. But your decision on one claim should not affect your consideration of the remaining claim. In other words, if you find one of the claims of a patent invalid, it does not necessarily mean that the remaining claim of the '597 Patent is also invalid.

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of September 20, 2010 (the '597 Patent's effective filing date).

Answer each subpart of Question No. 5.

**In answering Question No. 5(a), you are further instructed as follows:**

To prove that any claim of a patent is invalid because of inoperability, Halliburton must establish by clear and convincing evidence that the claim contains a limitation that is impossible to meet.

**Question 5(a):  Do you find by clear and convincing evidence that either of the following claims of the '597 Patent is inoperable?**

Answer "Yes" or "No" as to each claim.

Claim 1 _____ *NO* _____

Claim 8 _____ *NO* _____

**Go to Question No. 5(b).**

**In answering Question No. 5(b), you are further instructed as follows:**

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the art, as of the effective filing date of the claimed invention, to make and use the full scope of the claimed invention without undue experimentation. This requirement is known as the "enablement requirement." A patent claim that meets this requirement is sometimes referred to as being "enabled." If a patent claim is not enabled, it is invalid. Halliburton must prove that claim 1 or 8 of the '597 Patent is not enabled by clear and convincing evidence.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the art. Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain.

The fact that some experimentation may be required for a person of ordinary skill in the art to practice the claimed invention does not mean that a patent does not meet the enablement requirement. Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include:

(1)    The quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques. The question of undue experimentation is a matter of degree. Even extensive experimentation does not necessarily make the experiments unduly extensive where the experiments are

routine, such as repetition of known or commonly used techniques. But permissible experimentation is not without bounds.

(2)     The amount of direction or guidance disclosed in the patent;
(3)     The presence or absence of working examples in the patent;
(4)     The nature of the invention;
(5)     The state of the prior art;
(6)     The relative skill of those in the art;
(7)     The predictability of the art; and
(8)     The breadth of the claims.

No one factor or group of these factors is alone dispositive. Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the application (September 20, 2010), a person having ordinary skill in the art would need to experiment unduly to make and use the full scope of the claimed invention.

**Question 5(b):  Do you find by clear and convincing evidence that either of the following claims of the '597 Patent is not enabled?**

Answer "Yes" or "No" as to each claim.

Claim 1     _____*NO*_____

Claim 8     _____*NO*_____

**If you answered "Yes" to any part of Question Nos. 1 or 2 and you did not answer "Yes" to all parts of Question Nos. 5(a) and 5(b), then answer Question No. 6. Otherwise do not answer Question No. 6 and go to Question No. 7.**

**If you answered "Yes" to any part of Question Nos. 1 or 2 and you did not answer "Yes" to all parts of Question Nos. 5(a) and 5(b), then answer Question No. 6. Otherwise do not answer Question No. 6 and go to Question No. 7.**

## QUESTION NO. 6

**Instructions Concerning Question No. 6:**

If you find that Halliburton infringed on either claim 1 or 8 of the '597 Patent, and that those claims are not invalid, you must determine the amount of money damages to be awarded to Legacy for the infringement. On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you should not consider damages as to that claim. Legacy bears the burden of proving its damages by a preponderance of the evidence.

While Legacy is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork. You must be careful to ensure that the award is no more or no less than the value of the patented invention.

In this case, Legacy seeks a royalty to compensate it for Halliburton's alleged infringement. The law provides that no less than a reasonable royalty is the amount of money Legacy and Halliburton would have agreed upon as a fee for use of the '597 Patent at the time prior to when the alleged infringement began.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of Legacy and Halliburton would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In

determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of events that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

    (1)    The value that the claimed invention contributes to the accused product.

    (2)    The value that factors other than the claimed invention contributes to the accused product.

    (3)    Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

You have heard testimony about the so-called "*Georgia-Pacific*" factors, which can be considered in appropriate cases to inform the hypothetical negotiations. These factors are:

    (1)    The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as Legacy) and a licensee (such as Halliburton) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant

to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and noninfringing alternatives.

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a method that is licensed under the patent or that does not infringe the patent.

If you find that Halliburton has multiple products that infringe the '597 Patent, then there are different infringements, and you must determine a reasonably royalty based on multiple hypothetical negotiations, one concerning each infringing product. But if you find that all of Halliburton's relevant products are the same or substantially similar, then you must calculate damages based on a single hypothetical negotiation.

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Defendants' size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward

by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

Limit your answer below to only damages you find that were caused by the alleged infringement and you should not include any alleged damage due to any other factor.

**Question 6(a): What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Legacy for its damages, if any, for Halliburton's infringement of claims 1 and/or 8 of the '597 Patent?**

Answer in dollars and cents.

(i). Damages representing a running royalty as to using the GSR products.

Answer: _____.

(ii). Damages representing a running royalty as to using the GSB products.

Answer: _____.

(iii). Damages as to using the Q-Max XT products.

Answer: _____.

**If you answered Question No. 6(a)(iii), then answer Question No. 6(b). Otherwise do not answer Question No. 6(b) and go to Question No. 7.**

**Question 6(b): As to the sum you have awarded in Question No. 6(a)(iii), if any, what is the amount intended to represent?**

Answer: "a lump sum" or "a running royalty".

Answer: _____.

**Go to Question No. 7.**

**QUESTION NO. 7**

**Instructions Concerning Question No. 7:**

The Master Supply Agreement ("MSA") was a contract between Legacy, Morrison, and Global. Global's obligations later passed to Halliburton when it acquired Global. Halliburton and Global claim that Legacy and Morrison breached the MSA by unlawfully terminating the contract and by knowingly selling it separators that violated the '215 Patent.

For purposes of answering the questions below, you should assume that the '215 Patent includes the following clause "means, positioned a between said first and second chambers, for restricting fluid flow to generate a pressure drop in said production fluid and to separate gas and liquid as said production fluid enters said second chamber." As a matter of law, this is a means-plus-function element and requires special interpretation. The phrase "means . . . for restricting" in the '215 Patent means "a bearing housing having flow-restricting passages."

As part of Halliburton's breach of contract claim, to show infringement of the '215 Patent, Halliburton must prove, among other things, that Legacy's gas separators:

(1)  Contain a structure of "a bearing housing having flow-restricting passages" described in the patent specification and drawings, or its equivalent;
(2)  That performs the functions of:
    a.  restricting fluid flow to generate a pressure drop in the production fluid, and
    b.  restricting fluid flow to separate gas and liquid as the production fluid enters said second chamber.

To prevail on a breach of contract claim, Global and Halliburton must prove by a preponderance of the evidence, that:

(1)  Plaintiffs failed to comply with the MSA; and
(2)  The failure to comply was material.

Consider the following when determining whether a failure to comply is material:

(1)  The extent to which the injured party will be deprived of the benefit which he reasonably expected;

(2)     The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(3)     The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(4)     The likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances; and

(5)     The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

**Question 7:  Do you find that either of the Plaintiffs listed below breached the MSA?**

Answer "Yes" or "No" as to each Plaintiff.

Legacy            _____  NO  _____

Morrison          _____  NO  _____

**If you answered "Yes" for either Plaintiff in Question No. 7, then answer Question No. 8. Otherwise do not answer Question No. 8 and go to Question No. 10.**

**If you answered "Yes" for either Plaintiff in Question No. 7, then answer Question No. 8. Otherwise do not answer Question No. 8 and go to Question No. 10.**

## QUESTION NO. 8

**Instructions Concerning Question No. 8:**

Legacy and Morrison claim that their breach of the MSA, if any, is excused. The party claiming an excuse for an alleged breach of contract bears the burden of proving that fact by a preponderance of the evidence. Legacy and Morrison allege that, assuming they breached the MSA, their breach is excused because Global and Halliburton are barred by equitable estoppel.

Equitable estoppel applies if the following circumstances occurred:

(1)   Global and Halliburton
     a.  by words or conduct made a false representation or concealed material facts;
     b.  with knowledge of the facts or with knowledge or information that would lead a reasonable person to discover the facts; and
     c.  with the intention that Plaintiffs would rely on the false representation or concealment in acting or deciding not to act; **and**
(2)   Plaintiffs
     a.  did not know and had no means of knowing the real facts; and
     b.  relied to their detriment on the false representation or concealment of material facts.

Do not answer for any Plaintiff for whom you did not answer "Yes" in Question No. 7.

**Question 8:  Do you find that the failure to comply with the MSA of either of the Plaintiffs listed below, if any, was excused?**

Answer "Yes" or "No".

Legacy:     _____

Morrison:     _____

**If you answered "Yes" to Question No. 7 for either Plaintiff and did not answer "Yes" for both Plaintiffs in Question No. 8, then answer Question No. 9. Otherwise do not answer Question No. 9 and go to Question No. 10.**

**If you answered "Yes" to Question No. 7 for either Plaintiff and did not answer "Yes" for both Plaintiffs in Question No. 8, then answer Question No. 9. Otherwise do not answer Question No. 9 and go to Question No. 10.**

## QUESTION NO. 9

**Instructions Concerning Question No. 9:**

If you find that either of the Plaintiffs breached the MSA and that breach was not excused, you must then consider what amount of damages to award to Defendants.

Any damages you award for breach of contract must be direct damages. Direct damages can be the loss of the benefit of the contract or the loss of contractual profits. Direct damages can also be expenses necessarily incurred to put the contracting party in the position it would have been in had it received the benefit of its bargain.

Loss of the benefit of the contract is the difference, if any, between the value of the MSA agreed to by the parties and the value of the MSA as performed by the parties.

Do not answer for any Plaintiff for whom you did not answer "Yes" in Question No. 7.

**Question 9:  What sum of money, if paid now in cash, would fairly and reasonably compensate Global and Halliburton for their damages, if any, that resulted from the failure to comply with the MSA by either of the Plaintiffs listed below?**

Answer in dollars and cents.

Morrison _____

Legacy _____

**Go to Question No. 10.**

**QUESTION NO. 10**

**Instructions Concerning Question No. 10:**

      Legacy claims that Halliburton misappropriated certain trade secrets that it possessed (that being confidential drawings, specifications, manufacturing processes, and equipment configurations sometimes referred to in the testimony as "Trade Secret 9"). Sizing of the restrictor or diffuser or choosing the capacity of a gas separator do not fall within Trade Secret 9, as described above. To prevail on a claim of misappropriation of trade secrets, Legacy must establish by a preponderance of the evidence, that:

    (1)    It owns a trade secret;
    (2)    Halliburton acquired the trade secret through a breach of a confidential relationship or discovered the trade secret by improper means;
    (3)    Halliburton used the trade secrets in a manner not allowed by the MSA or otherwise not authorized by Legacy; and
    (4)    Legacy suffered damages as a result of that use.

      A trade secret means information, for example, business, scientific, technical, economic, or engineering, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, that—

    (1)    Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
    (2)    Is the subject of reasonable measures by the owner under the circumstances to maintain its secrecy.

      Matters of public knowledge or of general knowledge in an industry cannot be "trade secrets." However, a "trade secret" need not be novel or unique and it may consist of a combination of simple and otherwise known components. Information that would otherwise be classified as a "trade secret" is no longer secret and, thus, not a "trade secret" if it is disclosed to third parties who have no duty of confidentiality. One who voluntarily discloses information or fails to take

reasonable precautions to ensure its secrecy cannot claim that the information constituted a trade secret. Reasonable precautions to maintain secrecy include not taking actions that unnecessarily expose the secret to disclosure. Simply labelling property or information "proprietary" or "confidential" does not, in and of itself, make it a protectable trade secret. There can be no misappropriation of non-secret information.

You may consider the following factors in determining whether the information described above is a trade secret:

(1)     The extent to which the information was known outside Legacy's business;
(2)     The extent to which the information was known to Legacy's employees (if any) and others involved in Legacy's business.
(3)     The extent of measures taken by Legacy to guard the secrecy of the information.
(4)     The value of the information to Legacy and its competitors.
(5)     The amount of effort or money Legacy expended in developing the information; and
(6)     The ease or difficulty with which the information could be properly acquired or duplicated by others.

Halliburton assumed the obligations and accepted the benefits of the MSA when it acquired Global. "Improper means" include theft; bribery; misrepresentation; breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret; or espionage through electronic or other means. In contrast, "proper means" are discovery by independent development, reverse engineering, or any other means that are not improper.

"Own" means to have rightful, legal, or equitable title to, or the right to enforce rights in, a trade secret.

"Use" means any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant. Merely receiving trade secret information does not constitute "use" of a trade secret. Misappropriation does not require that defendant use it in exactly the form in which defendant received it. To find "use," you must find that the defendant has

actually put the trade secret to commercial operation and has benefitted from the use of that secret in commercial operation. For example, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret all constitute "use."

**Question 10:  Do you find that Halliburton misappropriated Legacy's Trade Secret 9?**

Answer "Yes" or "No":  _____ NO _____

**If you answered "Yes" to Question No. 10, then answer Question No. 11. Otherwise do not answer Question No. 11 and go to Question No. 12.**

**If you answered "Yes" to Question No. 10, then answer Question No. 11. Otherwise do not answer Question No. 11 and go to Question No. 12.**

## QUESTION NO. 11

**Instructions Concerning Question No. 11:**

Legacy must prove by a preponderance of the evidence the amount of actual damages sustained, if any, as a result of the misappropriation of Legacy's trade secrets.

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. To be a proximate cause, the act or omission complained of must be such that a person using the degree of care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Damages may be measured by Legacy's lost profits caused by the misappropriation, Halliburton's profits earned from the misappropriation; Halliburton's development costs avoided by the misappropriation; or a reasonable royalty, the price Legacy and Halliburton, would have agreed on, at the time of the misappropriation, as a fair price for use of the trade secret misappropriated.

**Question 11:   What sum of money, if paid now in cash, would fairly and reasonably compensate Legacy for its damages, if any, that were proximately caused by Halliburton's alleged misappropriation of their alleged trade secret?**

Answer in dollars and cents: _____

**Go to Question No. 12.**

## QUESTION NO. 14

**Instructions Concerning Question No. 14:**

Plaintiffs claim that they were fraudulently induced to enter the MSA by Global, by the March 2010 representation that there was no intention to sell for 5-8 years and that it would not disclose any of Legacy's confidential information to any prospective buyer of Global without Morrison's prior approval. To prevail on their fraudulent inducement claim, Plaintiffs must prove by a preponderance of the evidence that:

(1)   Global made a material misrepresentation;
(2)   The misrepresentation was made with knowledge of its falsity or recklessly without any knowledge of the truth and as a positive assertion
(3)   The misrepresentation was made to Plaintiffs for the purpose of inducing them to enter into the MSA; and
(4)   The misrepresentation was relied on by Plaintiffs in entering into the MSA and thereby suffered injury.

"Misrepresentation" means:

(1)   A false statement of fact;
(2)   A promise of future performance made with an intent, at the time the promise was made, not to perform as promised;
(3)   A statement of opinion based on a false statement of fact; or
(4)   A statement of opinion that the maker knows to be false or an expression of opinion that is false, made by one who has, or purports to have, special knowledge of the subject matter of the opinion.

"Special knowledge" means knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.

**Question 14:  Do you find that Global committed fraud in the inducement against Plaintiffs?**

Answer "Yes" or "No":   _____ *NO* _____

**If you answered "Yes" to Question No. 14, then answer Question No. 15. Otherwise do not answer Question No. 15 and go to Question No. 16.**

**If you answered "Yes" to Question No. 14, then answer Question No. 15. Otherwise do not answer Question No. 15 and go to Question No. 16.**

**QUESTION NO. 15**

**Instructions Concerning Question No. 15:**

If you find Global is liable for fraud in the inducement, you must determine the amount of damages to award to Plaintiffs.

In determining the amount of Plaintiffs damages, if any, you may consider out-of-pocket damages. Out-of-pocket damages are the difference between the value paid and the value received. You must consider out-of-pocket damages based on the relevant values at the time of the fraud. You may not consider any increase in value that occurred after the alleged fraud.

**Question 15: What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their damages, if any, that resulted from Global's fraud in the inducement?**

Answer in dollars and cents: _____

**Go to Question No. 16.**

## QUESTION NO. 16

**Instructions Concerning Question No. 16:**

Global claims it was fraudulently induced to enter the MSA with Plaintiffs because Legacy and Morrison falsely represented that Plaintiffs' technology was novel and different when it was allegedly not. To prevail on its fraudulent inducement claim, Global must prove by a preponderance of the evidence that:

(1)   Legacy and/or Morrison made a material misrepresentation;
(2)   The misrepresentation was made with knowledge of its falsity or recklessly without any knowledge of the truth and as a positive assertion
(3)   The misrepresentation was made to Global for the purpose of inducing it to enter into the MSA; and
(4)   The misrepresentation was relied on by Global in entering into the MSA and thereby suffered injury.

"Misrepresentation" means:

(1)   A false statement of fact;
(2)   A promise of future performance made with an intent, at the time the promise was made, not to perform as promised;
(3)   A statement of opinion based on a false statement of fact; or
(4)   A statement of opinion that the maker knows to be false or an expression of opinion that is false, made by one who has, or purports to have, special knowledge of the subject matter of the opinion.

"Special knowledge" means knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.

**Question 16:   Do you find that either of the Plaintiffs listed below committed fraud in the inducement against Global?**

Answer "Yes" or "No" as to each Plaintiff.

Legacy          _____*NO*_____

Morrison        _____*NO*_____

**If you answered "Yes" to Question No. 16 for either Plaintiff, then answer Question No. 17. Otherwise do not answer Question No. 17 and go to Question No. 19.**

**If you answered "Yes" to Question No. 16 for either Plaintiff, then answer Question No. 17. Otherwise do not answer Question No. 17 and go to Question No. 19.**

## QUESTION NO. 17

**Instructions Concerning Question No. 17:**

If you find that Plaintiffs are liable for fraud in the inducement, you must determine the amount of damages to award to Global.

In determining the amount of Global's damages, if any, you may consider out-of-pocket damages. Out-of-pocket damages are the difference between the value paid and the value received. You must consider out-of-pocket damages based on the relevant values at the time of the fraud. You may not consider any increase in value that occurred after the alleged fraud.

**Question 17:   What sum of money, if paid now in cash, would fairly and reasonably compensate Global for its damages, if any, that resulted from Plaintiffs' fraud in the inducement?**

Answer in dollars and cents:  _____

**If you answered "Yes" to Question No. 16 for both Plaintiffs and answered Question No. 17, then answer Question No. 18. Otherwise do not answer Question No. 18 and go to Question No. 19.**

**If you answered "Yes" to Question No. 16 for both Plaintiffs and answered Question No. 17, then answer Question No. 18. Otherwise do not answer Question No. 18 and go to Question No. 19.**

## QUESTION NO. 18

**Instructions Concerning Question No. 18:**

Assign percentages of responsibility only to those you found caused or contributed to cause the damages you found in your answer to Question No. 17.

The percentages you find must total 100 percent.

The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found.

**Question 18:   For each person you found caused or contributed to cause the damages to Global for fraud in the inducement, if any, find the percentage of responsibility attributable to each:**

Legacy              _____ %

Morrison            _____ %

Total:            _____ 100 ____ %

**If you answered "Yes" Question No. 14 and answered Question No. 15, then answer Question No. 19. Otherwise do not answer Question No. 19 and go to Question No. 21.**

**If you answered "Yes" Question No. 14 and answered Question No. 15, then answer Question No. 19. Otherwise do not answer Question No. 19 and go to Question No. 21.**

**QUESTION NO. 19**

**Instructions Concerning Questions Nos. 19 and 20:**

If you find that Global committed fraud in the inducement and awarded compensatory damages due to such act, you may also award exemplary damages, if you determine by clear and convincing evidence that the harm directed at Plaintiffs you are considering resulted from fraud. Plaintiffs have the burden of proof by clear and convincing evidence. In making any award of exemplary damages, you should consider that the purpose of exemplary damages is to punish a Defendant for shocking conduct, and to deter the Defendant and others from engaging in similar conduct in the future.

The law does not require you to award exemplary damages, however, if you decide to award exemplary damages, you must use sound reason in setting the amount of the damages. The amount of an award of exemplary damages must not reflect bias, prejudice, or sympathy toward any party.

You should presume Plaintiffs have been made whole by compensatory damages, so exemplary damages should be awarded only if the Defendant's misconduct, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

**In answering Question No. 19, you are further instructed as follows:**

To award exemplary damages against Global, Plaintiffs must prove by clear and convincing evidence that the harm Global allegedly caused them resulted from fraud.

"Fraud" occurred if—

(1)      Global made a material misrepresentation;

(2)     The misrepresentation is made with knowledge of its falsity or recklessly without any knowledge of the truth and as a positive assertion;

(3)     The misrepresentation is made with the intention that it should be acted on by Plaintiffs; and

(4)     Plaintiffs relied on the misrepresentation and thereby suffered injury.

"Misrepresentation" means:

(1)     A false statement of fact;

(2)     A promise of future performance made with an intent, at the time the promise was made, not to perform as promised;

(3)     A statement of opinion based on a false statement of fact; or

(4)     A statement of opinion that the maker knows to be false or an expression of opinion that is false, made by one who has, or purports to have, special knowledge of the subject matter of the opinion.

**Question 19:   Do you find by clear and convincing evidence that the harm to Plaintiffs resulted from Global's fraud?**

Answer "Yes" or "No":    _____

**If you answered "Yes" to Question No. 19, then answer Question No. 20. Otherwise do not answer Question No. 20 and go to Question No. 21.**

**If you answered "Yes" to Question No. 19, then answer Question No. 20. Otherwise do not answer Question No. 20 and go to Question No. 21.**

## QUESTION NO. 20

**In answering the question below, you are further instructed as follows:**

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages are—

(1)     The nature of the wrong;
(2)     The character of the conduct involved;
(3)     The degree of culpability of Global;
(4)     The situation and sensibilities of the parties concerned;
(5)     The extent to which such conduct offends a public sense of justice and propriety; and
(6)     The net worth of Global.

**Question 20: What sum of money, if any, if paid now in cash, should be assessed against Global and awarded to Plaintiffs as exemplary damages for the conduct found in Question No. 19?**

Answer in dollars and cents: _____

**If you answered "Yes" to Question No. 12 and answered Question No. 13, then answer Question No. 21. Otherwise do not answer Question No. 21 and go to Question No. 23.**

**If you answered "Yes" to Question No. 14, then answer Question No. 23. Otherwise do not answer Question No. 23 and go to Question No. 24.**

**QUESTION NO. 23**

**Instructions Concerning Question No. 23:**

You may find Global's net profits earned as a result of the fraud in the inducement, if any, committed in March 2010 that there was no intention to sell Global for 5-8 years and that it would not disclose any of Legacy's confidential information to any prospective buyer of Global without Morrison's prior approval. Profit is determined by deducting expenses and other costs from gross revenue. Gross revenue is all of the money Global received that is attributable to the fraud in the inducement, if any. Plaintiffs have the burden to prove Global's gross revenue attributable to the fraud by a preponderance of the evidence.

Global has the burden to prove any expenses and costs that should be deducted in determining its net profits.

**Question 23:   What was the amount of Global's profit gained from the alleged fraud in the inducement?**

Answer in dollars and cents: _____

**If you answered "Yes" to Question No. 12, then answer Question No. 24. Otherwise do not answer Question No. 24 and go to the last page and have the foreperson sign and date the verdict.**

This ends your deliberations. The foreperson should sign and date the verdict and inform the Court that a verdict has been reached.

We, the jury, have unanimously answered the above and foregoing special issues in the manner indicated in this verdict form and return these answers to the Court as our verdict.

ORIGINAL SIGNATURE ON
FILE IN CLERK'S OFFICE
_____
FOREPERSON

3-20-2020
_____
DATE