United States District Court
Southern District of Texas
**ENTERED**
May 29, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEGACY SEPARATORS, LLC, *et al.*, | § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:14-CV-02081 |
| HALLIBURTON ENERGY SERVICES, INC., *et al.*, | § § § | |
| Defendants. | § § | |

# ORDER

The Court held its final pretrial hearings in the above referenced matter on February 27 and 28, 2020. A jury was empaneled and trial ensued on March 2, 2020. The presentation of evidence continued until March 12, 2020. Final arguments were held the next day and the jury commenced its deliberations. After a week of deliberations, the jury had answered fourteen questions and resolved every issue except two (the other remaining unanswered questions were conditioned on answers to prior questions and thus needed no answers). (Doc. No. 1251). The two unresolved areas concern whether two of the defendants' products (gas separators designated as GSB and Q-Max XT) infringed on the '597 method patent owned by the plaintiffs and the questions related to these two issues. (*Id.* at 3, 5–6).

Since the jury's verdict did not completely resolve the infringement issues despite the Court's urging, its issuance of a dynamite charge, and the well-intentioned persistence of the dedicated jurors; and in light of the onset of nationwide COVID-19 shutdown, the jury was excused and the Court asked the parties to brief the best way for the Court to bring this litigation to a just conclusion. (Doc. No. 1254).

In response, the parties filed a Post-Trial Brief (Doc. No. 1258), a Motion for Entry of Judgment (Doc. No. 1260), and responses/objections to both of these documents (Doc. Nos. 1263 and 1265).[1] The Court has given these matters its thoughtful consideration and the following summarizes its findings.

First, the Court intends to enter an interlocutory judgment based on the issues resolved by the trial and try the remaining issues at its first opportunity. Also, the Court finds those issues and causes of actions that were pleaded, but not presented to the jury, were waived and are dismissed. The Court finds those issues and causes of actions that were raised by the pleadings and about which the parties presented evidence, but about which the jury was not questioned, were also waived and are dismissed.

The following are topics that the jury considered and on which it reached a verdict: 1) the alleged direct infringement of the '597 patent by Halliburton by its GSR products and the alleged induced infringement of the '597 patent by Halliburton's GSR products (which the jury found was not proven) (Doc. No. 1251 at 3, 5); 2) breach of the Master Service Agreement (MSA) by either Plaintiff (which the jury found was not proven) (*id.* at 19); 3) the alleged misappropriation of Plaintiffs' trade secrets by Halliburton (which the jury found was not proven) (*id.* at 24); 4) the fraud in the inducement of the MSA allegedly committed by Global Oilfield Services, LLC (which the jury found was not proven) (*id.* at 28); and 5) the fraud allegedly committed by Plaintiffs (which the jury found was not proven) (*id.* at 30). The parties that bore the burden of proof on these issues will take nothing by these actions as a result of the verdict and the Court's interlocutory judgment will reflect these findings.

---

[1] Plaintiffs objected to Halliburton Energy Services, Inc.'s Motion for Entry of Judgment as being inconsistent with the Court's order for post-trial briefs. (Doc. No. 1263). In light of this order, the Court overrules that objection as moot.

What remains is the alleged infringement and induced infringement of the '597 patent by Halliburton's GSB and Q-Max XT products and the issues related to those alleged infringements. The jury could not unanimously answer these issues despite its best efforts. These are the two topics that the Court will try when it can once again avail itself of jurors.

What seems a simple resolution is complicated by three issues: two raised by Halliburton and one raised by the Plaintiffs. Halliburton pleaded and offered proof through various witnesses that the '597 patent was invalid. It waived a number of these theories of invalidity by not requesting jury issues. Instead, it elected in the March trial to rely solely on the invalidity theories of inoperability and enablement. The invalidity issues not submitted to the jury were clearly waived. Thereafter, the jury found against Halliburton on both inoperability and enablement. (*Id.* at 11–12). The contention before the Court now is that should the Court retry the unanswered infringement claims, it ought to retry the invalidity claims that Halliburton lost on in the first trial.[2]

It is well-settled that the Court is permitted to grant partial new trials so long as the issues are 'distinct and separable.'" *See, e.g., Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1371 (Fed. Cir. 2013) (citing FED. R. CIV. P. 59), *vacated in part*, 575 U.S. 632, 135 S. Ct. 1920 (2015); *accord Rembrandt Diagnostics, LP v. Alere, Inc.*, No. 2019-1595, 2020 WL 1815748 at *8 (Fed. Cir. Apr. 10, 2020). "A court's authority to grant a partial new trial is likewise constrained by the Seventh Amendment." *Commil USA*, 720 F.3d at 1371 (citing *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931)). "Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may

---

[2] Halliburton also argues that the Court should enter judgment as a matter of law on the issue of invalidity. The Court denies that motion.

be had without injustice." *Id.* (quoting *Gasoline Prods.*, 283 U.S. at 500). "A partial new trial should not be granted where the issues to be retried are 'so interwoven' with other issues in the case 'that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty.'" *Id.* (quoting *Gasoline Prods.*, 283 U.S. at 500).

The Supreme Court and the Federal Circuit have both explained several times that "infringement and invalidity are separate matters under patent law." *Commil USA*, 135 S. Ct. at 1928 (citing *Pandrol USA, LP v. Airboss R. Prods., Inc.*, 320 F.3d 1354, 1365 (Fed. Cir. 2003)); *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) ("A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement."); *Rembrandt Diagnostics*, 2020 WL 1815748, at *9. Indeed, the Federal Circuit "routinely orders a partial new trial on infringement, while upholding an earlier verdict on validity." *Commil*, 720 F.3d at 1371 (first citing *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1374 (Fed. Cir. 2004); then citing *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1354–55 (Fed. Cir. 2010)); *see also Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1353–54 (Fed. Cir. 2019) (affirming the jury's verdict that the asserted patent claims were not invalid, but vacating and remanding certain infringement claims for a new trial).

Halliburton argues that, if the Court decides to hold a second trial on infringement, its invalidity defenses should also be retried because part of Halliburton's argument of non-infringement is that practicing the '597 method is impossible (and therefore invalid). (*See* Doc. No. 1260 at 12–13; Doc. No. 1265 at 3). The Court disagrees. Whether Halliburton proved by clear and convincing evidence that the '597 patent is physically impossible to practice is not "so interwoven" with whether Plaintiffs proved by a preponderance of the evidence that Halliburton infringed the '597 patent, such that the jury's unanimous finding as to the former must be

4

disregarded to determine the answer on the prior.[3] "To say that an invalid patent cannot be infringed . . . is in one sense a simple truth, both as a matter of logic and semantics." *Commil USA*, 135 S. Ct. at 1929 (citation omitted). Invalidity and infringement, however, are "distinct issues, bearing different burdens, different presumptions, and [typically] different evidence." *Id.* (internal citation and quotation omitted). Furthermore, *"invalidity is not a defense to infringement*, it is a defense to liability." *Id.* (emphasis added); *see also Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14CV03103SRNFLN, 2017 WL 1555881, at *11 (D. Minn. Mar. 29, 2017) ("While a finding of invalidity may ultimately preclude a finding of liability, it will not by itself preclude a finding of infringement.") (citing *Commil USA*, 135 S. Ct. at 1929).

Halliburton also argues that retrying infringement without invalidity would violate the Seventh Amendment because it would ask the first jury and the second jury to resolve the same factual dispute: whether the '597 patent works. (Doc. No. 1265 at 8). Specifically, Halliburton claims that "[b]ecause the jury did not fully answer that question (by failing to answer the infringement questions), the Court must also declare a mistrial with respect to the invalidity questions that implicated the same factual question." (*Id.*). The exact opposite is true.

The jury was expressly asked whether Claim 1 or Claim 8 of the '597 patent were "inoperable" (or "impossible to meet"). (*See* Doc. No. 1251 at 10–11). They unanimously answered no. (*Id.* at 11). It is simply nonsensical to argue that the jury failed to fully answer the question of whether the patent "works" (when it said the patent was *not* inoperable) because the jury did not answer whether Halliburton directly infringed or induced the infringement of the

---

[3] The Federal Circuit's recent holding in *Rembrandt Diagnostics* is easily distinguishable from this case. There, the Federal Circuit set aside a verdict of noninfringement based on an erroneous claim construction. *See Rembrandt Diagnostics*, 2020 WL 1815748, at *8. Thus, the issue of infringement was remanded for a new trial. *See id.* at *9. The Federal Circuit also remanded the issue of validity because the defendant "would suffer an injustice if it were not permitted to challenge the validity of claim 10" under the correct claim construction. *See id.* In this case, as explained in more detail below, the Court's construction of all relevant claims remains the same from the first trial to the second. Therefore, Halliburton does not suffer an injustice because it already had an opportunity to challenge the validity of Claims 1 and 8 of the '597 patent under the Court's definitions.

patent.[4] Asking a second jury to second-guess the first jury's verdict that the patent is not invalid, however, would clearly violate the Seventh Amendment. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996) ("The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues.").

The Court therefore will not revive Halliburton's invalidity claims in the retrial. That being said, the Court acknowledges that some of the same evidence Halliburton presented to the first jury while attempting to prove its invalidity claims may be admissible on other issues in a second trial to the second jury, subject to the traditional rules of evidence. *See In re Innotron Diagnostics*, 800 F.2d 1077, 1086 (Fed. Cir. 1986) ("'[T]he prohibition is not against having two juries review the same *evidence,* but rather against having two juries *decide* the same *essential issues.*'") (quoting *Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 587 F.Supp. 1112, 1117 (D. Del. 1984)) (emphasis in original). The Court will not retry any issues of invalidity. Those that were not dropped were considered by the jury, which found for the Plaintiffs. Defendants had a fair opportunity to prevail on these points and lost.

The second issue is one put forth by Plaintiffs. It is their desire that the Court allow them limited discovery to take depositions concerning the so-called "Beeken documents," plus they desire more documentary discovery. Defendants, of course, object.

This case has lasted over six years. Literally millions of dollars have been expended by both sides in discovery and preparation to try this case. This Court finds no reason to reopen discovery. Prior to the March trial, this Court bent over backwards to allow both sides to pursue

---

[4] The questions related to infringement did not contain any instruction suggesting that the jury must determine whether the patent "worked." (*See* Doc. No. 1251 at 1–5). Additionally, the invalidity questions were not conditioned on a finding of infringement, or vice versa. (*See id.* at 1–5, 10–12). Thus, Halliburton would have the Court believe that the jury did not "fully" answer whether the patent worked when it answered the only questions instructing it to consider if the patent was able to operate. The Court notes that Halliburton is not suggesting that the Court retry the infringement results that it won concerning its GSR products. The Court highly doubts that Halliburton would maintain its belief that the jury did not "fully answer" the question of whether the '597 patent works if the jury had returned a favorable verdict on invalidity.

a vast array of discovery options. The fact that this Court sustained objections to some evidence during the trial or that the Defendants argued that Plaintiffs' presentation had certain limitations is not, after six years, an excuse to reopen discovery, especially to seek evidence that could have been procured before the first trial.

The last issue that must be addressed is the issue of the definition of the word "space." Halliburton argues the Court should reverse its *Markman* ruling and redefine "space" in terms of a "vacuum"—a vacuum meaning the absence of oil, water, gas, or any other matter in the separator. This Court considered this argument when it issued its initial *Markman* ruling (Doc. No. 1151), before the first trial, throughout the trial, during the charge conference, and once again considers it here.

The most appealing feature of Halliburton's argument is that it correctly argues that, should this Court adopt its proposed definition, it would be the equivalent of a directed verdict against Plaintiffs, and would avoid the upcoming second trial and the promised specter of a third trial—thus preserving vital and scarce judicial resources and allowing the Court to avoid the pain and suffering of hearing the same witnesses time and again.

This Court appreciates any time that a lawyer or party acts with the Court's well-being in mind. It is an infrequent occurrence. Nevertheless, the Court will not change its *Markman* ruling—even at the risk of more wear and tear to the undersigned. The Court remains convinced in its ruling that "space" should be given the plain and ordinary meaning to those of ordinary skill in the art. (Doc. No. 1151 at 6). Moreover, if forced to redefine "space," it is likewise convinced that it would not adopt Halliburton's preferred definition of "vacuum" as the operative definition. (*See id.* at 6 n.1). The Court doubts that there is anyone familiar with the oil patch, whether skilled in the art or not, that believes that any method, much less the '597 method, of

operating a separator on an oil and gas well creates a vacuum inside an operating oil and gas separator. More specifically, the '597 patent says its method is comprised of, in part, "pumping liquid . . . at a rate to at least partially vacate the separation chamber to provide space in the separation chamber." There is no evidence that a person of ordinary skill in gas separators believes that modifying that pumping rate of liquid can create an area devoid of water, gas, liquid, and all other matter within the operating gas separator. Although Guy Morrison, III did describe the '597 method as creating an "empty space" or vacuum, the fact that he used those phrases is alone insufficient to prove that he meant them to be used in a technical, scientific manner (e.g., "devoid of matter"). (*See* March 4 PM Transcript at 34, 111). At any rate, there is no convincing evidence that a person of ordinary skill in the art at the time of the patent application was filed—the relevant inquiry for claim construction, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)—would believe that the '597 patent purports to pump liquid at a rate to create a vacuum.

Those issues being resolved, this Court sets this case for trial to begin on July 20, 2020.[5] The Court will hold a final pretrial conference on July 17, 2020 at 10:00 a.m. The Final Pretrial Order and all pretrial motions are due on or by June 26, 2020. If the parties desire a jury questionnaire, that is also due on or by June 26, 2020.

The Court anticipates only three parties participating: Legacy Separators, LLC, Guy Morrison, III, and Halliburton Energy Services, Inc. All issues concerning Wayne Richards and Global Oilfield Services, LLC have been resolved (*see* Doc. Nos. 1251 and 1257). It will try the two theories of infringement involving Halliburton's GSB and Q-Max XT products. As a guideline, this Court suggests that the parties anticipate a charge that will encompass the issues

---

[5] The Court will allow the parties to choose the alternative trial dates of July 27th or August 3rd if both sides agree and if they communicate that agreement to the Court by June 12, 2020.

8

raised by Questions 1(b), 1(c), 2(b), 2(c), 4, 6(a)(ii), 6(a)(iii), and 6(b) of the Court's prior charge. (Doc. No. 1251). Finally, the Court anticipates a trial lasting one week and that it will issue a scheduling order governing the conduct of the trial as it did before as trial approaches.

SIGNED at Houston, Texas this 29th day of May, 2020.

Andrew S. Hanen
United States District Judge