# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| LEGACY SEPARATORS, LLC, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>HALLIBURTON ENERGY SERVICES, INC., et al.,<br><br>    Defendants. | Civil Action No. 4-14-cv-02081 (Lead Case)<br><br>consolidated with<br>Civil Action No. 4-14-cv-03110<br><br>JURY TRIAL DEMANDED |
| HALLIBURTON ENERGY SERVICES, INC.,<br><br>    Counter-Plaintiff,<br><br>v.<br><br>LEGACY SEPARATORS, LLC, and GUY MORRISON III, Individually,<br><br>    Counter-Defendants. | |

**DEFENDANT'S MEMORANDUM OF LAW**

# TABLE OF CONTENTS

I. Patent ........................................................................................................................... 1

    A. Direct Infringement .......................................................................................... 1

    B. Indirect Infringement ....................................................................................... 4

    C. Claim Interpretation ......................................................................................... 5

II. Damages ...................................................................................................................... 6

    A. Patent ............................................................................................................... 6

    B. Willful Infringement ........................................................................................ 7

    C. Damages Waiver .............................................................................................. 8

    D. Attorneys' Fees ................................................................................................ 9

III. Interpreting the First Jury's Verdict ............................................................................ 9

IV. Conclusion ................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
   501 F.3d 1307 (Fed. Cir. 2007) ..................................................................................... 3, 4

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
   945 S.W.2d 812 (Tex. 1997) ............................................................................................. 8

*Cherokee Cty. Cogeneration Partners, L.P. v. Dynegy Mktg. & Trade*,
   305 S.W. 309 (Tex. App.—Houston [14th Dist.] 2009) .................................................. 9

*CSIRO v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015) ........................................................................................ 6

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
   909 F.3d 398 (Fed. Cir. 2018) .......................................................................................... 7

*Erdman Co. v. Phoenix Land & Acquisition, LLC*,
   2013 U.S. Dist. LEXIS 99751 (W.D. Ark. July 17, 2013) ............................................... 8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002) .......................................................................................................... 5

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) ........................................................................................ 1

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................................. 7

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ...................................................................................................... 7

*Hess Die Mold Inc. v. Am. Plasti-Plate Corp.*,
   653 S.W.2d 927 (Tex. App.—Tyler 1983, no writ) ........................................................ 8

*Joy Techs., Inc. v. Flakt*,
   6 F.3d 770 (Fed. Cir. 1993) .............................................................................................. 2

*Junker v. Med. Components, Inc.*,
   2019 WL 109385 (E.D. Pa. Jan. 4, 2019) ........................................................................ 5

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ........................................................................................ 6, 7

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2014) .......................................................................................................... 4

*Lucent Techs. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)............................................................................6, 7

*NTP, Inc. v. Research in Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005).............................................................................2, 3

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014).............................................................................................9

*Omega Patents, LLC v. CalAmp Corp.*,
   920 F.3d 1337 (Fed. Cir. 2019)...............................................................................4

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   875 F.3d 1369 (Fed. Cir. 2017)...............................................................................7

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
   553 U.S. 617 (2008).................................................................................................3

*Ricoh Co., Ltd. v. Quanta Computer, Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008).............................................................................2, 3

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) (en banc)................................................................6

*Schriber-Schroth Co. v. Cleveland Trust Co.*,
   311 U.S. 211 (1940).................................................................................................5

*Tenn. Gas Pipeline Co. v. Technip USA Corp.*,
   2008 WL 3876141 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet.
   denied).....................................................................................................................8

*Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*,
   400 F. Supp. 2d 998 (S.D. Tex. 2005)...................................................................2

*Tulsa Zoo Mgmt. v. Peckham Guyton Alber & Viets, Inc.*,
   2019 U.S. Dist. LEXIS 33854 (N.D. Okla. Mar. 4, 2019)....................................8

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)...............................................................................6

*Vulcan Eng'g Co. v. Fata Aluminium, Inc.*,
   278 F.3d 1366 (Fed. Cir. 2002)...............................................................................6

*Warner-Lambert Co. v. Apotex Corp.*,
   316 F.3d 1348 (Fed. Cir. 2003)...............................................................................4

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
   418 F.3d 1326 (Fed. Cir. 2005)...............................................................................1

*Weber Elec. Co. v. E.H. Freeman Elec. Co.*,
  256 U.S. 668 (1921) ............................................................................................................5

*Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*,
  2017 WL 3706344 (E.D. La. Aug. 28, 2017) ....................................................................2, 3

**STATUTES**

35 U.S.C. § 284 ..............................................................................................................................6, 7

35 U.S.C. § 285 .................................................................................................................................9

Pursuant to this Court's Civil Procedures, Defendant Halliburton Energy Services, Inc. ("Halliburton") submits this Memorandum of Law describing the applicable legal standards in advance of the jury trial in this matter. This Memorandum addresses issues of law that Halliburton expects to arise during the trial.

## Nature and Stage of the Proceeding

After most of the parties' claims were resolved at the first trial in this matter, the only remaining claim to be tried is Plaintiff Legacy Separators, LLC's[1] allegation that Halliburton's use of GSB and Q-Max XT separators infringes, either directly or indirectly, U.S. Patent No. 8,424,597. Halliburton denies Legacy's allegations and brought a claim for declaratory judgment of non-infringement of the '597 patent.

### I.     Patent

Plaintiffs have the burden of proving patent infringement by a preponderance of the evidence. *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005). Legacy brings claims for both direct infringement and indirect infringement.

#### A.     Direct Infringement

Because the patent-in-suit is a method patent, Legacy must prove *actual use* to prove infringement. "To infringe a method claim, a person must have practiced all steps of the claimed method." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010) (citing *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009)). "[A] method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method. The sale of the apparatus is not a sale of the method. A method claim is

---

[1] Currently, Guy Morrison III technically remains listed as a Plaintiff. However, because Legacy is the sole owner of the '597 patent, Morrison is not a proper plaintiff on the infringement claim and should not be referred to as such at the upcoming trial.

1

directly infringed only by one practicing the patented method." *Joy Techs., Inc. v. Flakt*, 6 F.3d 770, 774-75 (Fed. Cir. 1993). In fact, the "law is *unequivocal* that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)." *Id.* at 773 (emphasis added); *see also Ricoh Co., Ltd. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1334 (Fed. Cir. 2008) (holding that "a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under §271(a)").

The Federal Circuit in *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), discussed whether the sale of or offer to sell a patented method constituted infringement. In doing so, it explained that "the ordinary meaning of a sale includes the concept of a transfer of title or property," and that it "is difficult to apply this concept to a method claim consisting of a series of acts." *Id.* at 1319. It also reviewed legislative history, noting that "Congress has consistently expressed the view that it understands infringement of method claims under section 271(a) to be limited to use." *Id.* at 1319-20 (describing legislative history). The Federal Circuit did not ultimately resolve whether the sale of or offer to sell a method constitutes infringement, however, because the defendant was not selling or offering to sell the asserted method claims in that case. *Id.* at 1320-21. In *Ricoh*, the Federal Circuit again avoided the question, but reiterated that "the application of the concept of a sale or offer of sale to the actual carrying out of a sequence of actions is ambiguous." 550 F.3d at 1335.

Relying on those cases, "district courts have generally held that a method claim may be infringed only by use." *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, 2017 WL 3706344, at *4 (E.D. La. Aug. 28, 2017) (collecting cases); *see also Transocean Offshore*

*Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, 400 F. Supp. 2d 998, 1012 (S.D. Tex. 2005).[2] As those courts explain, "limiting infringement of method claims to the use, rather than sale, of such methods accords with . . . Federal Circuit precedent." *Wright's Well*, 2017 WL 3706344, at *4 (citing *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012); *Joy Techs.*, 6 F.3d at 773-74). Additionally, "limiting direct infringement of method claims to use of such methods makes sense in light of the longstanding rule that ideas are not patentable." *Id.* at *5. "[S]hort of application, *i.e.*, use, a method is merely an idea. Just as an idea without an application cannot be patented, a method claim without actual application cannot be infringed." *Id.*

Moreover, "[i]n order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). If the accused device "can be used at any given time in a noninfringing manner, the accused device does not necessarily infringe." *Id.* And if the device does not necessarily infringe, the plaintiff must show that the device was actually used in an infringing manner. *See id.* (finding no evidence of direct infringement because there was no evidence that anyone other than the expert used the device in an infringing manner).

Legacy's claims will fail because they cannot show how any separator was operated, much less that it was operated in a way that infringed the '597 patent. The documents that

---

[2] To be sure, "a few courts have taken the opposite view." *Wright's Well*, 2017 WL 3706344, at *4. Legacy cited those cases in the Pretrial Order. *See* Dkt. No. 1276 at 8 n.7. Those cases are inconsistent with "the balance of case law," *Wright's Well*, 2017 WL 3706344, at *4, and the Federal Circuit's description of the issue in *NTP* and *Ricoh*. In fact, even the Supreme Court case on which those district court cases rely recognized that "a patented method may not be sold in the same way as an article or device." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 628 (2008); *see also Wright's Well*, 2017 WL 3706344, at *4 (distinguishing *Quanta*).

3

Legacy points to as its supposed evidence of infringement—ESP Design Technical Reports and SimuLift records—are merely theoretical designs, oftentimes based on projects and best guesses about well conditions. They do not provide any flow rate data about relative flow rates in and out of the gas separator—the relevant metric for determining infringement. Moreover, even if Legacy was correct about what information is contained in the ESP Design Technical Reports and SimuLift records, Legacy is incorrect that those documents show more flow out of the separator than flow in. They show—as physics and mathematics require—that exactly what goes into the separator also comes out of the separator.

### B. Indirect Infringement

There are two types of indirect infringement: contributory and induced. Each requires Legacy to prove an underlying act of direct infringement by someone else, *i.e.*, that someone else performed every step of the method patent. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014). Plaintiffs cannot show anyone infringed the '597 patent.

Legacy is no longer asserting a claim for contributory infringement. With respect to induced infringement, Legacy must establish "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement. Specific intent requires a 'showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.'" *ACCO*, 501 F.3d at 1312 (internal citations omitted). "[M]ere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce must be proven." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003). "'[O]pinion-of-counsel evidence' [also] is relevant to the intent analysis for induced infringement[.]" *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1352-53 (Fed. Cir. 2019).

4

Legacy cannot show that Halliburton intended to infringe the '597 patent. In fact, the evidence will show that Halliburton went out of its way to *avoid* infringing the '597 patent, including by obtaining a noninfringement opinion.

### C. Claim Interpretation

When a patentee amends his claims during patent prosecution, the legal scope of the claims change. And when a patentee amends a claim to overcome a Patent Office examiner's rejection, the patentee cannot later argue during an infringement action that his claim covers the surrendered scope. "It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with reference to claims that have been cancelled or rejected and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent." *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220-21 (1940); *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002) ("Prosecution history estoppel requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process."). In other words, "when a patentee narrows the scope of his patent during the prosecution proceedings in an effort to avoid invalidity, he may not then turn around and claim the previously conceded scope in an action for patent infringement." *Junker v. Med. Components, Inc.*, 2019 WL 109385, at *14 (E.D. Pa. Jan. 4, 2019). This is known as prosecution history estoppel.

While prosecution history estoppel arises most commonly in cases involving a doctrine of equivalents argument, the Supreme Court long ago explained that estoppel was not limited to such circumstances. If a patentee narrows a claim "in order to obtain a patent[,] the patentee may not by construction, *or* by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments, which amount to a disclaimer." *Weber Elec. Co. v. E.H. Freeman Elec. Co.*, 256 U.S. 668, 677-78 (1921) (emphasis added).

Here, Morrison amended his claims during patent prosecution to overcome the examiner's rejection. Specifically, he removed the concept of "pressure drop." Under

5

longstanding estoppel jurisprudence, he may not now "reclaim" that subject matter by interpreting the allowed claims in a way to encompass the "pressure drop" matter that he disclaimed to get the '597 patent.

## II. Damages

### A. Patent

If a patent owner proves infringement, it can collect a reasonable royalty for the infringement. 35 U.S.C. § 284. Patent damages in particular are frequently subject to scrutiny, and it is the patentee's burden to prove its damages by a preponderance of the evidence. *Vulcan Eng'g Co. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002). "[D]amages awarded for patent infringement must reflect the value attributable to the infringing features of the product, and no more." *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (internal quotations omitted). The first task in calculating patent damages is "determining the correct (or at least approximately correct) value of the patented invention, when it is but one part or feature among many." *Lucent*, 580 F.3d at 1337. "When a patentee seeks damages on unpatented components sold with a patented apparatus, courts have applied a formulation known as the 'entire market value rule' to determine whether such components should be included in the damages computation, whether for reasonable royalty purposes or for lost profits purposes." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (en banc) (citations omitted); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (damages on entire market value of the accused product appropriate only where the patented feature creates the "basis of customer demand" or "substantially create[s] the value of the component parts").

The same is true for method patents. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) (holding that "use of the entire market value rule was impermissible" because the patentee "failed to present evidence showing that the patented disc

6

discrimination method drove demand for the laptop"). It is not enough to "merely show that the [patented] method is viewed as valuable, important, or even essential to the use of the [accused product]," or that a product without that feature "would be commercially unviable." *Id.*

One way to arrive at a reasonable royalty is to use the "hypothetical negotiation" approach, informed by the *Georgia-Pacific* factors, to "ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before the infringement began." *Lucent*, 580 F.3d at 1324 (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).

"[A] reasonable royalty 'cannot include activities that do not constitute patent infringement, as patent damages are limited to those "adequate to compensate for the infringement."'" *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411 (Fed. Cir. 2018) (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015)). Thus, for a method patent, if the patentee does not prove a particular use is infringing, the patentee cannot collect royalties for that use.

**B. Willful Infringement**

The Court may "increase the damages up to three times" if a jury finds willful infringement. 35 U.S.C. § 284. Treble damages "are not to be meted out in a typical infringement case," however, "but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). "District courts enjoy discretion in deciding whether to award enhanced damages, and in what amount," but generally limit such award to cases where the infringer's conduct was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.*; *see also Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382-83 (Fed. Cir. 2017) ("[A]n award of enhanced damages does not

7

necessarily flow from a willfulness finding," and is "generally only appropriate in egregious cases of misconduct, such as willful, wanton, or malicious behavior."). No such circumstances apply here.

### C. Damages Waiver

"A general measure of damages is subject to any agreement that the parties might have made with respect to damages . . . ." *Tenn. Gas Pipeline Co. v. Technip USA Corp.*, 2008 WL 3876141, at *6 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet. denied). Courts thus enforce damages limitations on which the parties agreed. *See, e.g.*, *id.* Such provisions may waive damages claims for non-contract claims. *See Tulsa Zoo Mgmt. v. Peckham Guyton Alber & Viets, Inc.*, 2019 U.S. Dist. LEXIS 33854, at *74-75 (N.D. Okla. Mar. 4, 2019) (holding that contractual provision barring consequential damages for "claims, disputes or other matters in question arising out of or relating to this Agreement" barred such damages on both contract and tort claims); *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 2013 U.S. Dist. LEXIS 99751, at *7-10 (W.D. Ark. July 17, 2013) (holding that contract provision waiving consequential damages "arising out of or relating to the Design-Build Contract" applies to various tort claims, including negligence and breach of fiduciary duty). In this case, the MSA unambiguously and expressly "waives all claims against the other Party…for any consequential, incidental, indirect, special, exemplary or punitive damages (including loss of actual or anticipated profits)." MSA § 8.3.

Where parties agreed to a damages limitation, the Court must distinguish between recoverable (direct) and unrecoverable (consequential or indirect) damages. "Direct damages are the necessary and usual result of the defendant's wrongful act; they flow naturally and necessarily from the wrong . . . . Consequential damages, on the other hand, result naturally, but not necessarily . . . ."*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997). Direct damages generally are the benefit of the bargain the parties struck. *See Hess Die*

*Mold Inc. v. Am. Plasti-Plate Corp.*, 653 S.W.2d 927, 928–29 (Tex. App.—Tyler 1983, no writ). "[P]rofits lost on other contracts or relationships resulting from the breach," however, "may be classified as 'indirect' or consequential damages." *Cherokee Cty. Cogeneration Partners, L.P. v. Dynegy Mktg. & Trade*, 305 S.W. 309, 314 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The only direct damage in this case, not barred by the MSA, is the price Defendants would have paid had it purchased all of the accused separators through the MSA. Any other damages are an attempt to renegotiate the MSA and ignore the MSA's clear damages waiver.

### D.    Attorneys' Fees

The Court may award attorneys' fees for patent infringement to the prevailing party if it finds this to be an "exceptional case[]." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

### III.    Interpreting the First Jury's Verdict

Halliburton expects that certain issues relating to interpreting the previous jury's verdict may arise during the second trial.

First, the jury's non-infringement finding with respect to the GSR establishes that use of the GSR does not infringe claims 1 or 8 of the '597 patent, because it does not practice the method steps described in those claims. The Court instructed the jury in detail regarding how to assess whether Halliburton's use of the GSR practiced each and every step of claims 1 or 8 of the '597 method. When asked if "Halliburton directly infringes [claims 1 or 8] of the '597 Patent method by the use of its GSR products," the jury answered "No." Dkt. 1251 at 3. The jury's answer was the same when asked whether Halliburton had "performed an act that induced the infringement of [claims 1 or 8] of the '597 Patent method by the use of its GSR products." *Id.* at

9

5. Thus, the first jury's verdict establishes that Halliburton's use of GSR separators does not practice the '597 patent.

Legacy may argue that the first jury determined only that Halliburton had a license to practice the '597 patent with GSR separators, not that the GSR separators did not practice the '597 patent. The better reading of the verdict, however, is that the jury found that Halliburton was not practicing the '597 patent with GSR separators. Question No. 3—which the jury did not reach given its non-infringement finding—asked the jury whether Halliburton had a license to use the '597 patent with GSR separators. The instructions explained that "[a] patent owner exhausts his or her rights in a patent through an authorized sale or license of a patented item." Dkt. 1251 at 7. Question No. 3 then explicitly asked whether "Legacy's sale of GSR separators to Global and Halliburton exhausted Legacy's rights in those separators." *Id.* Because the jury answered "No" to Question Nos. 1 and 2—finding that Halliburton's use of GSR separators did not infringe—it never had to decide the implications of Legacy's sale of GSR separators to Halliburton. Even Legacy characterized Question No. 3 as the one in which the MSA would be relevant. *See* 3/13/20 Tr. 40:12-18.

Second, in light of the parties' negotiations leading up to the Joint Pretrial Order, Halliburton expects that Legacy will argue that the first jury's verdict established the validity of the '597 patent. That is incorrect. At best, the first jury's verdict established only that Halliburton did not prove *by clear and convincing evidence* that the '597 patent is invalid based on the invalidity theories presented to the jury.[3] It does not prove the opposite. The verdict "was not that the patent was valid per se, but that [Halliburton] had failed to carry [its] burden to prove it invalid." *In re Construction Equip. Co.*, 665 F.3d 1254, 1256 n.3 (Fed. Cir. 2011); *United Access*

---

[3] To be clear, Halliburton disagrees with the jury's invalidity verdict and reserves all rights to appeal that finding.

10

*Tech., LLC v. EarthLink, Inc.*, 2012 WL 2175786, at *4 (D. Del. June 14, 2012) ("In finding the absence of substantial evidence to sustain the jury verdict on invalidity, this court did not determine the Patents were valid per se, but concluded EarthLink failed to carry its burden to prove they were invalid."). Because patents already are presumed valid, the first jury's verdict changed nothing with respect to the '597 patent's validity. *See United Access*, 2012 WL 2175786, at *4 (explaining that a jury verdict of no invalidity "did not materially alter the legal relationship between the parties," because "the Patents already enjoyed a presumption of validity," so "the legal relationship existing between the parties before, during and after this matter remained the same").

## IV.    Conclusion

In light of the legal principles described above, and the facts that will be developed at trial, Legacy will not be able to prove its claims. Halliburton looks forward to resolution of this case.

Dated: September 11, 2020

Respectfully submitted,

*/s/ Aimee P. Fagan*
Robert Manley
Texas State Bar No. 00787955
rmanley@mckoolsmith.com
Aimee Perilloux Fagan
Texas State Bar No. 24010299
afagan@mckoolsmith.com
Phillip M. Aurentz
Texas State Bar No. 24059404
paurentz@mckoolsmith.com
Meredith Elkins
Texas State Bar No. 24084584
melkins@mckoolsmith.com
Marcus Rabinowitz
Texas State Bar No. 24098293
mrabinowitz@mckoolsmith.com
Chelsea A. Priest
Texas Bar No. 24102375
cpriest@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Samuel F. Baxter
Texas Bar No. 01938000
sbaxter@mckoolsmith.com
McKool Smith, P.C.
104 E. Houston Street, Suite 300
Marshall, Texas  75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

**ATTORNEYS FOR DEFENDANT AND COUNTERCLAIM-PLAINTIFF HALLIBURTON ENERGY SERVICES, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on September 11, 2020.

                                         */s/ Aimee P. Fagan*
                                         Aimee P. Fagan