IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEGACY SEPARATORS, LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. 4-14-cv-02081 |
| HALLIBURTON ENERGY SERVICES, | § | |
| INC., et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S MEMORANDUM OF LAW**

Plaintiff Legacy Separators, LLC submits its memorandum of law to accompany the Joint Pretrial Order, Proposed Jury Instructions, Proposed Verdict Form, and to present their claims and defenses in the case. The sole issue to be decided in the next trial case is patent infringement. The first trial resolved all non-patent issues in the consolidated actions, as well as the issue of patent validity. Legacy accuses Halliburton of infringing U.S. Patent No. 8,424,597. Each asserted claim is considered a separate invention and will have infringement resolved separately.

**1.      Legacy's Claim for Patent Infringement**

To show infringement, Legacy has the burden by preponderance of the evidence to show that Halliburton infringes the '597 patent if it, without authority, makes, uses, offers to sell, or sells any patented invention within the United States during the term of the patent. 35 U.S.C. §271(a). This is direct infringement. Halliburton does not have to know about the patent to infringe it. To infringe a method claim, every step of the method must be performed. *See, e.g.*, *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1021-22 (Fed. Cir. 2015). Unless specified in the claims, the steps do not have to be done in the order recited. *Interactive Give Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342-43 (Fed. Cir. 2001).

Halliburton also infringes when it sells or offers to sell performance of the steps of the patented method. *See WesternGeco L.L.C. v. ION Geophysical Corp.*, 869 F. Supp. 2d 793, 798-99 (S.D. Tex. 2012), *rev'd in part on reconsideration*, 2012 WL 1708852 (S.D. Tex. May 15, 2012); *CLS Bank Int'l v. Alice Corp. Pty.*, 667 F. Supp. 2d 29, 37 (D.D.C. 2009) ("one who 'sells' or 'offers to sell' each and every step of a patented method infringes the patent").

Halliburton directly infringes if it is responsible for others' performance of some of the method steps, even if it itself did not perform all of the steps. *See, e.g.*, *Akami*, 797 F.3d at 1021-22. Halliburton is responsible for those others if they are directly controlled by it or it controls their performance or where Halliburton acts as a joint enterprise with the others. *Id.*

Halliburton infringes if it actively induces infringement of the '597 patent. 35 U.S.C. §271(b). Active inducement requires that Halliburton:

1. aided, instructed, or otherwise acted with the intent to cause another to directly infringe;
2. knew of the patent, or showed willful blindness to the existence of the patent, at that time;
3. knew, or showed willful blindness, that the actions of another would infringe at least one claim of the patent; and
4. direct infringement of at least one patent claim.

*See, e.g.*, 35 U.S.C. §271(b); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766-70 (2011); *Akami*, 797 F.3d at 1021.

Legacy alleges that Halliburton willfully infringed the '597 patent, meaning that it acted maliciously, wantonly, deliberately, consciously wrongful, flagrantly, or in bad faith as to Legacy patent rights. *See Halo Elecs. Inc. v. Pulse Elecs. Inc.*, 136 S. Ct. 1923, 1932 (2016).

## 2.     The effect of the jury verdict on GSR infringement

Halliburton argues that the jury's finding of no infringement as to GSR separators in the first trial should be applied to *all* separators. *See* Am. Joint Pretrial Order at n.2. This is incorrect.

The first jury's determination as to the GSR has no relevance to the GSB and XT claims that this Court has set for the second trial.

In the first trial, Legacy argued that Halliburton's refurbishment of *used* GSR separators was unauthorized and thus was infringement of the '597 patent—because use of the patent was authorized by Legacy only as to *new* GSRs, not rebuilt GSRs. Thus, the sole issue presented to the jury on the GSR claim was whether Halliburton had authority to practice the '597 method when using refurbished GSR separators. That is clear from the trial record:

- Halliburton integration manager Matt Oehler testified that "He [Mr. Morrison] was concerned that we were taking separators that we purchased from him, after being used for a period of time or whatever, if they came back out of a well, that we were doing some repairs to them and then reusing them. That was his concern if I recall … I believe we had the right to repair, yes, sir." Day 4, AM Tr. at 146, 148.

- Legacy damages expert Todd Schoettelkotte testified, "Because my general understanding is, is that while Global could purchase a GSR from Legacy and use the method performed by the GSR, it did not have permission, if you will, to refurbish it or fix it and then put it back out in the field again." Day 6, AM Tr. at 75-76.

- Legacy argued in closings, "The products, and I believe you got this during testimony, the GSR, these are rebuilt. You can't – under the contract, you can't rebuild the GSRs. You can certainly repair them and we have no issue with that. But what Halliburton was doing, it was rebuilding them and then leasing them to other people. You can't do it." Day 10, AM Tr. at 41.

- The verdict form states, "Replacement of a worn out component is permitted and does not constitute infringement of the patent on the '597 method." Dkt. 1251, Jury Verdict at 3.

The jury's GSR verdict was based on a finding that Halliburton repairs were permissible. Since repaired GSR separators were used to practice the method, the use was authorized, so the repaired GSR separators did not infringe, according to the jury's finding.

Although the jury rejected Legacy's claim on GSR infringement, it could not reach a verdict on the GSB and XT infringement claims. Dkt. 1251, Jury Verdict at 3. This inability to

reach a verdict on the GSB and XT claims is proof that the issue as to the GSR was different from the GSB and XT issues. The GSR issue was whether the authorization to practice the '597 method extended to repaired GSRs. No such issue is presented by GSB and XT claims. Legacy did not sell those separators and so did not authorize use of the '597 method for the GSB or XT.

The rejection of Halliburton's argument is important because it seeks to misuse the jury finding of no-infringement as to the GSRs to affect the outcome in the second trial. As proven at the first trial, GSR, GSB, and XT separator systems operate the same. According to Halliburton engineer Daniel Zheng, the GSB and GSR function "the same." Day 4, PM at 166. Legacy noted his testimony in closings: "what we heard from Mr. Zheng, the young engineer in court is, you know what, it all really doesn't make much difference because all three separators function the same…. It's because they're all operated the same as the '597." Day 10, AM at 29-30.

Because all three separators operate the same, Halliburton now seeks to contort the GSR verdict to argue that the jury decided Halliburton's use of *any* GSR separator (new or rebuilt) did not infringe the '597 patent. *See* Dkt. 1276 at 3 n.2. This is back-door issue preclusion intended to unfairly prevent Legacy from proving its remaining infringement claims for the GSB and XT.[1]

Having presided over the first trial, the Court is aware that the no-infringement finding as to repaired GSR separators does not affect whether the GSB and XT systems infringe the '597 patent. If it did, the jury would not have hung on the GSB and XT infringement questions, and there would be no need to set this case for a second trial. The Court should reject Halliburton's argument that the finding as to repaired GSR separators is proper to influence the second jury's decision on the GSB and XT claims that the first jury could not decide.

---

[1]     Even if the basis of the GSR verdict were not clear from the record, issue preclusion would be prohibited at least because no final judgment has been entered in this case.

### 3.    Patent infringement damages

If Legacy proves infringement of any claim of the '597 patent, it is entitled to damages to compensate it for the infringement, at least in the amount of a reasonable royalty, together with costs and interest. 35 U.S.C. §284. The Court may increase the damages up the three times the amount found. *Id.* Moreover, it may award attorney fees if the Court finds the case exceptional. 35 U.S.C. §285.

Legacy seeks damages in the form of a reasonable royalty. It can be determined many ways, but the common approach is a hypothetical negotiation. At such a negotiation, the intent is to determine what the parties would have agreed upon as a reasonable royalty before Halliburton began to infringe, with both parties agreeing that the patent is valid, it is infringed, and the parties are willing to reach agreement. *See, e.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012). In determining the royalty that would have resulted from a hypothetical negotiation, the following *Georgia-Pacific* factors are instructive:

- Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

- The rates paid by Halliburton to license other patents comparable to the '597 patent.

- The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

- Legacy's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

- The commercial relationship between Legacy and Halliburton, such as whether or not they are competitors in the same territory in the same line of business.

- The effect of selling the patented method in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

- The duration of the '597 patent and the term of the license.

- The established profitability of the patented method; its commercial success; and its popularity.

- The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

- The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for Legacy; and the benefits to those who have used the invention.

- The extent to which Halliburton has made use of the invention; and any evidence that shows the value of that use.

- The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

- The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

- The opinion testimony of qualified experts.

- Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

*See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-36 (Fed. Cir. 2009);

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Where two accused products give rise to two separate infringements, there may be two

hypothetical negotiations and two different reasonable royalties. *Applied Med. Res. Corp. v. U.S.*

*Surgical Corp.*, 435 F.3d 1356, 1361–62 (Fed. Cir. 2006) ("Because Versaport I and Versaport II

caused two separate infringements, and each infringement commenced on a different date, it follows that the reasonable royalties may well be different from each other.")

While Legacy bears the burden of proving damages, any doubts caused by Halliburton's failure to keep or produce proper records should be resolved against it and in favor of Legacy. Any confusion or difficulties caused by its records also should be held against Halliburton, not Legacy. *See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572-73 (Fed. Cir. 1996); *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 799 (Fed. Cir. 1988) (cite omitted); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986) (where infringer's failure to keep accurate records causes difficulty in ascertaining damages, it must bear adverse consequences); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554-55 (Fed. Cir. 1984)*; Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

Dated: September 11, 2020

Respectfully submitted,

/s/

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
James E. Zucker
State Bar No. 24060876
jzucker@yettercoleman.com
Pamela L. Hohensee
State Bar No. 09812250
phohensee@yettercoleman.com
Matthew C. Zorn
State Bar No. 24106625
mzorn@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
(713) 632-8002 (Fax)

ATTORNEYS FOR PLAINTIFF
LEGACY SEPARATORS, LLC

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on September 11, 2020.

/s/ Matthew C. Zorn
Matthew C. Zorn